## AMBIGUOUS WORDS IN A WRITTEN CONTRACT.

Circuit Court of Cuyahoga County.

REUBEN ARONSON v. THE FRANKFORT CHAIR CO.

Decided, October 27, 1905.

*Parol Evidence—Ambiguous Words May be Explained by Parol Evidence.*

1. Ambiguous words used in a written contract may be explained by parol evidence as to what was said at the time the words claimed to be ambiguous were used.

2. When a printed order form provides that orders will be filled at the earliest possible date, writing on the order "ship at once," "rush," indicates a special agreement as to shipment and creates ambiguity.

*R. A. Castner,* for plaintiff in error.
*White, Johnson, McCaslin & Cannon,* contra.

MARVIN, J. (orally); WINCH, J., and HENRY, J., concur.

The defendant in error, hereinafter spoken of as the plaintiff, brought suit before a justice of the peace against the plaintiff in error, hereinafter spoken of as the defendant. After trial before the justice of the peace the case was appealed to and

tried in the court of common pleas. The petition sets forth that the plaintiff is a corporation; that the defendant was doing business as "Auction Storage & Loan Co." and that he was indebted to said plaintiff on an account, a copy of which is attached to and made a part of the petition, and prays for judgment for the amount of said account. The account reads:

"FRANKFORT, KY., Oct. 1st, 1901.

"Auction Storage & Loan Co., Cleveland, Ohio.
    "In account with
"Frankfort Chair Co.
  "6 doz. 5436 chairs
  "1 doz.  165 chairs    $46.75."

The defendant answers, admitting that he was doing business as "Auction Storage & Loan Co.," and denying all other allegations of the petition, except that the case came into the common pleas court by appeal from the judgment of the justice of the peace.

On the trial the plaintiff offered in evidence, among other things, the deposition of one Augustus F. Boshe, from which it appears that he took an order for goods from the defendant on the 18th of September, 1901; that he mailed the same to the Frankfort Chair Company on the morning of the 19th. Though it is made probable from his testimony that he took an order in writing from the defendant, it is not distinctly said so by him. In any event the plaintiff did not offer any such writing in evidence, nor does the witness anywhere state that the goods ordered are those charged for in this account. He says he shipped all the goods ordered except one-half dozen rockers, which the plaintiff did not have in stock and for which no charge is made, and that the shipment was made on the 1st of October, 1901.

Plaintiff also took the deposition of one Charles W. Hinnan, who testifies that he is manager of the shipping department of the Frankfort Chair Co. He says he received the defendant's order in his department September 30, 1901, and shipped the chairs ordered, except one-half dozen rockers, on October 1st. He nowhere says that he shipped the goods charged for in the account sued upon.

The bill of exceptions does not set out all of the evidence, but states that in addition to the two depositions already mentioned, evidence was given on the part of the plaintiff tending to show that the defendant had admitted the claim of the plaintiff, and that evidence was given on the part of defendant tending to disprove such admission. Of course, with the bill in this condition, the court can not say that the verdict is not supported by the evidence, though such incompetent evidence as appears in the deposition is certainly very weak.

The plaintiff rested its case without introducing, as has already been said, any written order given by the defendant for goods.

To make the defendant's case, both he and his wife went upon the stand, and before the written order was introduced by anybody, and when there had been no evidence introduced about it, except as shown by the deposition to Boshe who took the order, it was sought to show by each of them what was said between the parties at the time the order was given. Boshe had testified, that he took the order and mailed it to the plaintiff and that the goods were shipped in accordance with the order, except that one-half dozen chairs had not been sent because the plaintiff did not have them in stock, that the goods were shipped as promptly as possible and as promptly as is the custom with such orders in the trade. Then this question had been asked of Boshe:

"Was there any request made by the defendant out of the ordinary at the time he made this order in regard to getting the chairs to him, and did you understand from him that if he got the chairs in the regular manner and in the regular course of business that that was all he demanded?"

To that Boshe answered:

"No extraordinary request was made and he understood that the chairs would be shipped to him as quickly as possible."

For the purpose of showing that the goods ordered were for a particular purpose and that the agent who took the order agreed to deliver them within one week, this question was asked the defendant when he was on the witness stand:

"What was said by you at the time the order was given, to the agent who took the order for the chairs, as to the time when they should be shipped?"

This was objected to, the objection sustained and a proper exception taken.

When the defendant's wife was upon the stand she testified that she was present when the order for the goods was given; that she heard all the conversation pertaining to such order, and plaintiff offered then to prove by her that defendant's agent agreed to have the chairs in Cleveland within one week; that defendant told him that the chairs were to fill a contract made by defendant with one M. M. Rahy, who was about to open a restaurant and that they must be ready for delivery to Rahy before the 28th day of September, 1901, or the order should not be taken. To this end she was asked by counsel for plaintiff the following question:

"What was said by the defendant to the agent of plaintiff at the time the order was given as to the time when the order should be delivered in Cleveland?"

Objection to this question was made by plaintiff, and sustained, and proper exception taken. Bearing in mind that up to this time no written order had been offered by either party and that plaintiff's agent had answered that no extraordinary request was made, we are unable to discover any ground upon which the objection made to the testimony of either of these witnesses should have been sustained. The plaintiff was not relying upon any writing but upon oral testimony as to having received an order and having complied with it. The defendant undertook by the same kind of evidence to show that what was said at the time the order was made varied the order from that which the plaintiff claimed. The case was argued, here, however, upon the theory that the written order was already in evidence, though it had not then been offered, but immediately thereafter it was put in evidence and is on a printed form evidently prepared by the plaintiff, and reads as follows:

At the top of the order appeared the words in print "Frankfort Chair Co., Frankfort, Ky." Printed on the left hand side

of the paper are words "Order No." Under that "Ship to,";
under that the word "When" and under that the word
"Terms." Then further down and across the order from left
to right and so separated as to indicate that columns are to be
filled in under the several headings, the following words appear
in print:

"Doz. Number ..... White or Wood finish ...., K. D. or S.
U., Per Doz. ..... Amount ..... Description ....."

Then there appears in writing these words: "Cleveland, O.,
Sept. 10, 1901." Extending along the line of the printed words
"ship to" appear in writing the words "Auction Storage & Loan
Co., 187 Ontario St." Then after the printed word "Address"
is written "Cleveland Ohio." Then on the line with "When"
in writing "At once," and then in parenthesis the word "Rush"
in writing. Then after the word "Terms" is written the terms
of payment that were made. Then under the printed words
"Numbers" and "Wood" are words indicating the number and
kinds of chairs that were ordered.

Then at the bottom of the order in printing are these words:

"Unless otherwise constituted, all balance orders will be filled
at the earliest possible date. Will make no freight allowance or
allowance for breakage on goods in transit, as we hold transpor-
tation company's receipt that chairs will be delivered in good
order."

As has already been stated, the case was argued to us as
though that writing had already been introduced in evidence,
and then it was urged that any testimony which could be given
by this husband or wife as to what was said at the time the or-
der was received would be to permit evidence to contradict or
vary the terms of the written contract.

It is said that there is nothing in this contract that is am-
biguous or requires any explanation. It is recognized by law-
yers that parol evidence will not be received to vary the terms
of a written contract, but a written contract, the terms of which
are ambiguous, may be explained by the circumstances under
which the writing was made. It is said, as I have already said,

that there is nothing ambiguous in any of the words used here, and it is said that all of the words have a meaning distinctly understood in the trade and so well understood by everybody that they must have known, if they had this writing, just what they meant. After "When" are the written words "At once." But it is said the words "At once" have a fixed meaning among business men in an order for goods, and that they mean, with all convenient speed; they mean, within a reasonable time. As used in this order, is it possible that they meant that? If so, they need not have written them in at all. "Unless otherwise constituted all balance orders will be filled at the earliest possible date." If they didn't mean to change that at all the writing of the words "at once" was entirely unnecessary. But it must be assumed that they wrote them in there for some purpose. They didn't need to write them in to indicate that goods would be furnished at the earliest possible date, for they had al-already said that in print. But that is not all. Then follows the word "Rush." That has a fixed meaning in business. I find by the dictionary that word means: "with great haste and violence." It has other meanings. It clearly did not mean that here, but it has meant something or they would not have written it in. Now, what do these words mean as used by the parties at the time this order was made? If we can find just what was said at the time, and if that was said which it is claimed was said would be shown by the answer of this defendant and his wife, that would have aided very materially in determining what was meant.

The authorities are uniform that you may introduce parol evidence to explain ambiguous words, and you may introduce such evidence to show the circumstances under which the ambiguous words are used. *Burrett* v. *Allen,* 10 Ohio, 426; *Elliott on Evidence,* 597; *Leonard* v. *Stickney,* 131 Mass., 539; *Tuttle* v. *Burgett,* 53 O. S., 498; *Becker* v. *Jordon,* 3 O. S., 439; *Wigmore on Evidence,* pp. 2430-2465.

The case of *Quarry Co.* v. *Clements,* 38 O. S., 587, is especially in point in this case, where what was said by the parties at the time the words were used which it is claimed were ambiguous was affirmed.

For error in sustaining the objection to the question put to defendant below and the question put to his wife, the judgment is reversed and the case remanded to the court of common pleas.

---

### SPECIFIC PERFORMANCE REFUSED.